UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
MICHAEL MITCHELL,

                              Petitioner,

       -against-

L. LILLEY ET AL.,

                              Respondent.
---------------------------------------------------------- x

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ APR 29, 2019 ★
BROOKLYN OFFICE

MEMORANDUM & ORDER

15-cv-5935 (ENV)

VITALIANO, D.J.

Petitioner Michael Mitchell, convicted of murder, has filed a *pro se* petition for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254. Petition, Dkt. No. 1 ("Pet."). For the reasons set forth below, the writ is denied and the petition is dismissed.

Background[1]

In the early hours of April 28, 2010, Mahamood Yafee was working at a grocery store at the intersection of Glenwood Road and East 104th Street in Brooklyn. *See* State's Response to Order to Show Cause, Dkt. No. 6 ("Opp."), Ex. C at 2-3. The grocery store had a video security system, consisting of two cameras outside the store and several others inside. *Id.* At around 3:00 A.M., Mitchell and Shereik Ellis approached a window at the store through which customers were served after midnight. *Id.* at 4. After Mitchell bought a beer from Yafee, who recognized Mitchell as a regular customer, he and Ellis walked away from the window and toward the nearby intersection. *Id.* The video security system captured Mitchell looking behind him before they crossed the street and looking behind him a second time when they were in the middle of

---

[1] The relevant facts are thoroughly set out in the briefs submitted to the Appellate Division by Mitchell (Opp. Ex. B) and the state (Opp. Ex. C). For purposes of this Memorandum & Order, only the facts helpful to the Court's understanding will be repeated.

1

the intersection. *Id.* at 5. Mitchell then reached his right hand into either his back right-side pants pocket or the back right side of his waistband. *Id.* He extended his right arm straight toward Ellis, without touching him. *Id.* Mitchell paused and then hurriedly crossed the street eastward toward the Breukelen Houses, out of camera view. *Id.* Ellis "doubled over" and, after a short while, staggered out of camera view. *Id.*

Two minutes after extending his arm the first time, Mitchell reentered camera view, walking toward the direction Ellis had moved earlier, before again moving out of camera view. About twenty seconds later, Mitchell reappeared in camera view as he "hurriedly walked back" toward the Breukelen Houses. *Id.* at 6.

Mohomed Muflahi, who worked at the grocery store and who lived on the same block as the store, was at home when he heard what he believed to be a gunshot. *Id.* He looked out of his apartment window and saw Ellis with his hand on his stomach and heard Ellis calling for help. *Id.* He saw a man walk toward Ellis, shoot him four times, and walk to the Breukelen Houses. *Id.* Meanwhile, Yafee, who was listening to loud music inside the store, heard what he believed to be a gunshot at approximately 3:08 A.M., looked up at the video security feed playing on a television inside the store, and saw an individual crossing Glenwood Road. *Id.* at 6-7.

At around 3:23 A.M., in response to a 911 call, a police officer arrived on the scene and found Ellis lying on the ground with apparent multiple gunshot wounds to the torso. *Id.* at 7. Several shell casings were nearby. *Id.* EMS personnel pronounced Ellis dead at the scene. *Id.* at 8. At approximately 6:05 A.M., the Crime Scene Unit arrived, and a detective assigned to it recovered five shell casings. *Id.* at 9. An autopsy performed that night revealed that Ellis had been shot six times and that he had died as a result of the gunshot wounds. *Id.* at 8.

Mitchell was apprehended on May 6, 2010. *Id.* at 10. Mitchell told the detective

2

questioning him that he had heard about a shooting at Glenwood Road and East 104th Street and that he was the last known person to have been seen with Ellis before he was killed. *Id.* at 11. After going to the grocery store, Mitchell claims, he separated from Ellis and learned the following day that Ellis had been shot dead. *Id.* at 12. Later, in a police lineup, both Yafee and Muflahi recognized Mitchell. *Id.* at 14.

Mitchell was charged with murder in the second degree and criminal possession of a weapon in the second degree in Kings County Supreme Court. *Id.* at 2. On November 15, 2011, the jury found Mitchell guilty of murder in the second degree. *Id.* at 14. He was sentenced to a prison term of 25 years to life. *Id.* at 14-15.

Mitchell appealed to the Appellate Division, Second Department, arguing that the verdict was against the weight of the evidence and that the evidence was legally insufficient to support his conviction. Pet. at 3. On May 21, 2014, the Second Department affirmed. *People v. Mitchell*, 117 A.D.3d 971, 985 N.Y.S.2d 896 (Mem.) (2d Dep't 2014). On December 3, 2014, the New York Court of Appeals denied his application for leave to appeal. *People v. Mitchell*, 24 N.Y.3d 1086, 62 N.E.3d 350, 1 N.Y.S. 13 (2014). On November 30, 2015, he commenced the instant action.

## Standard of Review

Under the Anti-terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a writ of *habeas corpus* shall not issue with respect to any claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to," or involved an unreasonable application of, "clearly established federal law" as determined by the United States Supreme Court, or (2) "was based on an unreasonable determination of the facts" in light of the evidence presented. 28 U.S.C. § 2254(d); *see also Gutierrez v. McGinnis*,

389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011); *see also Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

A federal *habeas corpus* proceeding is not an unbounded second appeal *de novo*. "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102 (2011) (internal quotation marks omitted). Review under AEDPA "demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66, 132 S. Ct. 490, 491, 181 L. Ed. 2d 468 (2011) (internal quotation marks omitted).

*Habeas corpus* jurisprudence, given these ground rules, is well-cabined. For the purposes of federal *habeas* review, "clearly established federal law" refers to the holdings, as opposed to *dicta*, of Supreme Court decisions in effect at the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1498, 146 L. Ed. 2d 389 (2000). A state court decision is "contrary to clearly established federal law," within the meaning of § 2254(d), if it contradicts relevant Supreme Court precedent or arrives at a different conclusion based on "materially indistinguishable" facts. *Id.* at 405-06. A state court decision is classified as one resting on an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of" the case. *Id.* at 413.

The state court decision need not be "so far off the mark as to suggest judicial incompetence" before *habeas* relief may be granted. *Francis S. v. Stone*, 221 F.3d 100, 111 (2d

4

Cir. 2000). However, a federal court may reverse a state court ruling only where it is "so lacking in justification that there [is no] possibility for fairminded disagreement." *Vega v. Walsh*, 669 F.3d 123 (2d Cir. 2012). "If this standard is difficult to meet – and it is – that is because it was meant to be." *Burt v. Titlow*, 571 U.S. 12, 20, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013) (internal quotation marks omitted). Federal courts should not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas review is the remedy." *Id.*

## Discussion

In his petition, Mitchell presents the same two claims he brought on direct appeal. He challenges the legal sufficiency of the evidence for his conviction on murder in the second degree and also the weight of the evidence. *See* Pet. at 3.[2] "A challenge to the weight of the evidence, as opposed to the legal sufficiency, is a state law claim that is not cognizable on federal habeas review." *Peters v. Poole*, No. 03-CV-2919 ARR, 2013 WL 6048994, at *6 (E.D.N.Y. Nov. 13, 2013); *see also McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."). Accordingly, this Court need only, and can only, address Mitchell's legal sufficiency argument.

But, even as to the claim that might have seemed a predicate for a federal writ of *habeas corpus* – the legal sufficiency of the evidence supporting conviction – Mitchell is not entitled to relief because he failed to comply with the State's contemporaneous objection rule. The

---

[2] The petition does not include a memorandum of law or set forth any facts to support Mitchell's claim, but the Court treats the brief he submitted to the Appellate Division, attached as an exhibit to the state's opposition memorandum, as setting forth his arguments on *habeas*. *See* Opp. Ex. B. Other than his flat-out denial, there is nothing Mitchell points to in support factually of his insufficiency argument.

Appellate Division determined that his challenge to the legal sufficiency of the evidence was "unpreserved for appellate review." *Mitchell*, 117 A.D.3d 971. "[I]t is a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts." *Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S. Ct. 2497, 2503, 53 L. Ed. 2d 594 (1977). The failure to preserve an argument for appellate review, pursuant to N.Y. Crim. Proc. Law § 470.05(2), is an adequate and independent state ground for the Appellate Division's affirmance. *See Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (finding ruling by New York Court of Appeals that petitioner failed to comply with state's contemporaneous objection rule to be an "independent and adequate" state ground on which to deny *habeas* relief). This decisively ends the Court's inquiry.

Even if Mitchell's legal sufficiency argument were preserved for *habeas* review, though, the outcome would be the same. "As a matter of federal constitutional law a jury's verdict may only be overturned if the evidence is insufficient to permit any rational juror to find guilt beyond a reasonable doubt." *McKinnon*, 422 F. App'x 69, 75 (2d Cir. 2011). In this case, there is no doubt that a rational jury could find Mitchell guilty of second-degree murder beyond a reasonable doubt. The elements of second-degree murder under New York law are satisfied when (1) a defendant intended to cause the death of another person and (2) caused the death of such person. *See* N.Y. Pen. Law § 125.25(1). On direct appeal, the Appellate Division concluded, "viewing the evidence in the light most favorable to the prosecution (*see People v. Contes*, 60 N.Y.2d 620, 621, 467 N.Y.S.2d 349, 454 N.E.2d 932), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt."[3] *Mitchell*, 117 A.D.3d

---

[3] That the Appellate Division chose to address the merits of Mitchell's claim does not alter the fact that his claim remains unpreserved for review on *habeas*. *See Glenn v. Bartlett*, 98 F.3d

6

971. Mitchell's argument that the state failed to prove motive carries no weight "since motive is not an element of the crime of murder." *Id.*

With no room for doubt, it is clear that a reasonable jury could have found that the state proved, beyond a reasonable doubt, that Mitchell intended to, and did, cause the death of Ellis. The facts, as set forth earlier, are all supported by mounds of admissible evidence more than sufficient to permit a reasonable jury to find, beyond a reasonable doubt, that Mitchell was guilty of murder in the second degree for causing Ellis's death. As a consequence, even if Mitchell's legal sufficiency argument were preserved for *habeas* review, the jury's verdict could not be disturbed either on direct appeal or here.

## Conclusion

For the foregoing reasons, a writ of *habeas corpus* is denied and the petition is dismissed.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2).

The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum & Order would not be taken in good faith and, therefore, *in forma pauperis* is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to enter judgment accordingly, close this case and mail a copy of this Memorandum & Order to the *pro se* petitioner.

So Ordered.

---

721, 725 (2d Cir. 1996) ("We do not agree that by discussing the merits of Glenn's claim, the Appellate Division waived the procedural bar it clearly invoked earlier in its opinion.").

7

Dated: Brooklyn, New York
      April 19, 2018

                                    /s/ USDJ ERIC N. VITALIANO
                                    ERIC N. VITALIANO
                                    United States District Judge